YEANDLE et al. v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Third Circuit. April 12, 1909.)

No. 6.

1. MASTER AND SERVANT (§ 231*)—DEATH OF SERVANT—RAILROADS—FOLLOWING TRAINS.

Where decedent was lawfully on the tracks over which defendant was operating trains, in the prosecution of his work of inspecting signals and signal lights by means of a gasoline motor car, decedent was entitled to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

expect that those in control of following trains would use due caution, where there was a full opportunity for view, not to run him down, though such right would not excuse want of due care on his part.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 675–677; Dec. Dig. § 231.*]

2. MASTER AND SERVANT (§ 289*)—DEATH OF SERVANT—RAILROADS—CONTRIBUTORY NEGLIGENCE.

Whether decedent, a railroad employé lawfully operating a gasoline motor car at the rate of 25 miles an hour, was negligent in not looking back for a following extra train, of the existence of which he had no knowledge, for a minute and a half or two minutes occupied by the train in approaching him at a negligent and improper rate of 50 miles an hour, in violation of the rules of the railroad company, was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

3. COURTS (§ 322*)—FEDERAL COURTS—DIVERSE CITIZENSHIP.

A declaration describing defendant as a corporation organized under and by virtue of the laws of Pennsylvania and plaintiff as being of the state of New Jersey did not sufficiently allege diverse citizenship to confer jurisdiction on a federal Circuit Court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 876, 877, 878; Dec. Dig. § 322.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298].

4. COURTS (§ 322*)—FEDERAL COURTS—DIVERSE CITIZENSHIP.

A declaration alleging that plaintiff was a corporation organized under the laws of Pennsylvania and that letters of administration had been taken out by plaintiff in New Jersey was insufficient to confer federal jurisdiction on the ground of diverse citizenship.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 876, 877, 878; Dec. Dig. § 322.*]

5. COURTS (§ 280*)—FEDERAL COURTS—JURISDICTION—PRESUMPTIONS.

United States courts being of limited jurisdiction, no presumption will be entertained as to the existence of jurisdictional facts, which must be both alleged and proved.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 817; Dec. Dig. § 280.*]

6. COURTS (§ 405*)—RECORD—JURISDICTIONAL QUESTIONS.

Where the record on a writ of error to the Circuit Court of Appeals does not show a case within the jurisdiction of the Circuit Court, the Circuit Court of Appeals will notice the fact, though no jurisdictional question is raised by the parties.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1103; Dec. Dig. § 405.*]

7. APPEAL AND ERROR (§ 653*)—RECORD—AMENDMENT.

The record on a writ of error to a federal court cannot be amended there so as to show federal jurisdiction.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2816–2829; Dec. Dig. § 653.*]

In Error to the Circuit Court of the United States for the District of New Jersey.

Samuel Kadish, for plaintiffs in error.

Alan H. Strong, for defendant in error.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

GRAY, Circuit Judge. Suit was brought in the court below by the plaintiffs in error, as administrators of Ralph A. Dey, deceased, against the Pennsylvania Railroad Company, the defendant in error, to recover damages for the death of the decedent, which was alleged to have been caused by the negligence of the defendant. At the close of plaintiffs' testimony, there was a judgment of non suit, on motion of the defendant, to which this writ of error was sued out.

At the time of his death, the decedent was in the employ of the New York & Long Branch Railroad Company, as its master mechanic and inspector of its signals and signal lights, used in the operation of the railroad owned, managed and controlled by it. The Pennsylvania Railroad Company, by virtue of a contract with the said New York & Long Branch Railroad Company, ran its trains over the tracks of the latter road, pursuant to its rules and regulations. On the 31st day of July, 1907, the decedent, with one Whitworth as an assistant, was proceeding on a gasoline motor car, as had been his custom, along the tracks of the company by which he was employed, for the purpose of inspecting signals and signal lamps. Just before rounding a sharp curve on the road, they had a clear view, on looking back, for a long distance, and had seen no approaching train. After rounding the curve, they proceeded at a speed of 25 miles an hour, on a tangent to the curve, for something over a mile, when they were overtaken by a train running at high speed, which, colliding with their car, caused the death of the decedent. It was broad daylight at the time of the accident, and there was evidence tending to show that those on the engine, upon rounding the curve, had a clear and unobstructed view ahead for more than a mile; that this train, which was an extra train, and not a scheduled train, was running at a high rate of speed, as it must have been to overtake decedent's car, which was running at 25 or 30 miles an hour; that no whistle, or other signal, was given by the engine, except the short, sharp blasts a moment before the collision; and that a red flag was flying from the rear of the motor car. Decedent was lawfully upon the tracks, in the prosecution of his work, and had a right to expect that those in control of following trains would use due caution, where there was full opportunity of view, not to run him down, though, of course, this would not excuse any want of due care on his own part. There was also evidence that, after rounding the curve, neither of the men looked behind them. Assuming, however, that the locomotive engine was going at the rate of 50 miles an hour, and the motor car going at the rate of 25 miles an hour, as there was evidence tending to show, there was ground for the inference that, if they had looked around when half the distance from the curve to the point of the accident, they would not have seen the engine, by reason of the curve. The alleged negligence in not looking might be confined, therefore, to one-half the distance between the curve and the place where the car was struck. It would be a question for the jury, whether a man running such a car at 25 miles an hour, and on that account obliged to keep his eye ahead for obstructions, would be guilty of negligence in not looking back for the minute and a half or two minutes occupied in passing over the interval described.

There was also evidence tending to show that decedent and his assistant knew that they were not on the time of any of the regular trains, and that there was a rule of the company that no special train, if a special excursion train, could lawfully exceed 35 miles an hour, or if a locomotive engine with a car, 25 miles an hour.

It might be a question, under these circumstances, whether, if decedent had looked behind and, discovering the train, had attempted to slow down his own car, in order to alight and remove it from the track, he would not have been the sooner overtaken by the following engine running at the high speed at which it must have been running. It is also a question, whether, if he had looked around and seen the approaching train, he had not a right to anticipate that he would not be run down while in full view, and that it was a reasonable thing in him to proceed, at the rate at which he was going, to the next station, called Hazlet's, 2,000 feet beyond the place of the collision, at which he expected to stop, where he could have conveniently gotten out of the way of the following train. There was also evidence tending to show that the following train was being run in a reckless and negligent manner, which the motion for nonsuit, made at the conclusion of plaintiffs' testimony, must assume, and it was a fair question whether, under the circumstances, anything done or omitted by the decedent had any causal connection with the collision which resulted in his death. The learned judge of the court below granted the motion for a nonsuit, on the ground that, as a question of law, the decedent must be taken to have been guilty of contributory negligence. We think, however, that it was a case, under all the circumstances, for submission to the jury.

There is a question of jurisdiction, however, appearing on the record, the determination of which must control our disposition of the case. It was not brought to the attention of the court below, but has been called to our attention by the counsel for the defendant in error. The declaration of the plaintiff describes the defendant as "a corporation organized under and by virtue of the laws of the state of Pennsylvania," and the plaintiffs as being "of the state of New Jersey." There is no doubt that this is not a sufficient allegation of the diverse citizenship necessary to the jurisdiction of the Circuit Court. Nor is this defect cured by anything which elsewhere appears in the record. The allegation, that letters of administration were taken out by the plaintiffs in New Jersey, is plainly insufficient, and it is not denied that there was no proof of citizenship made during the trial. The United States Circuit Courts are courts of limited jurisdiction, and no presumption will be entertained as to the existence of the jurisdictional facts. These facts must be alleged, and if controverted must be proved. Where the record does not show a case within the jurisdiction of a Circuit Court, this court will take notice of that fact, although no question as to jurisdiction has been raised by the parties. Grace v. Am. Cent. Ins. Co., 109 U. S. 278, 283, 3 Sup. Ct. 207, 27 L. Ed. 932; M., C. & L. M. Ry. Co. v. Swan, 111 U. S. 379, 4 Sup. Ct. 510, 28 L. Ed. 462; Cont. Ins. Co. v. Rhoads, 119 U. S. 237, 240, 7 Sup. Ct. 193, 30 L. Ed. 380. Neel v. Pa. Co., 157 U. S. 153, 15 Sup. Ct. 589, 39 L. Ed. 654.

Though the record cannot be amended here, it is possible, in the disposition that we make of this case, that it may be amended in the court below, to which it will be remanded, and we therefore, following the course pursued by the Supreme Court of the United States in some of the cases already referred to, have attempted to indicate, for the benefit of the parties at a possible future trial, the conclusion reached by us on the merits of the motion for nonsuit.

The judgment of the court below is therefore reversed, and the case remanded, with directions to set aside the judgment, and for such further proceedings as may not be inconsistent with this opinion.